# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| JESSICA STRIPLING AND MIEDO DONQUE, *on behalf of themselves and all others similarly situated*, <br><br> Plaintiffs, <br><br> v. <br><br> BANK OF AMERICA, N.A., <br><br> Defendant. | Case No. 1:23-cv-06829 <br><br> **CLASS ACTION COMPLAINT** <br><br> **DEMAND FOR JURY TRIAL** |

Plaintiffs Jessica Stripling and Miedo Donque ("Plaintiffs"), on behalf of themselves and all others similarly situated, bring this Class Action Complaint against Defendant Bank of America, N.A. ("BANA"). Plaintiffs, by and through their counsel, make the following allegations pursuant to the investigation of their counsel, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## <u>INTRODUCTION</u>

1.      For nearly a decade, Bank of America flouted its duty to its customers and the law by opening accounts that customers did not authorize. On top of this, Bank of America charged customers monthly fees for the maintenance of these "phantom" accounts, enriching itself and causing harm to its customers. BANA opened unauthorized accounts for Plaintiffs Stripling and Donque without their consent. They seek to represent themselves and other similarly situated customers who had unauthorized accounts opened in their names without their consent by BANA since January 1, 2012.

2.      BANA's nefarious practice of opening unauthorized accounts for its customers is not anomalous—it is baked into its business. BANA generates profit in part by the number of banking products it sells to customers. These products include credit cards, debit cards, checking accounts, and savings accounts ("Products"). BANA incentivizes its employees to drive the sale of these

Products by considering the number of Products opened on behalf of a customer by a particular employee in reviewing that employee's performance and in providing them with incentive compensation, regardless of whether those Products are authorized by the customer. The higher the number of Products sold, the higher the rating BANA gives the employee who made the sale.

3.      BANA then charges customers monthly maintenance fees or interest on the Products. When customers inevitably do not maintain balances, make minimum payments, or pay fees on the unauthorized accounts—because they do not know those accounts exist—BANA charges customers fees and penalties for having insufficient balances or for nonpayment.

4.      Recently, in July 2023, the Consumer Financial Protection Bureau ("CFPB") uncovered how BANA systematically deceives its customers by rewarding BANA employees for opening unauthorized accounts, which the agency charges violates federal law.[1]  The CFPB examined how "in response to sales pressure or to obtain incentive rewards, [BANA]'s employees sometimes submitted applications for and issued credit cards without consumers' consent" and that BANA "generated associated fees from credit card accounts opened without consumers' consent."[2] CFPB Director Rohit Chopra said BANA's practices, including opening unauthorized accounts on behalf of its customers, "are illegal and undermine customer trust." [3]

5.      BANA opened these unauthorized accounts, according to the agency, as part of the bank's "practice to obtain consumer reports in the course of considering consumers for new credit

---

[1] *In the Matter of Bank of America, N.A.*, C.F.P.B. Admin. Proceeding File No. 2023-CFPB-0007 [hereinafter *In the Matter of Bank of America*] (2023), s3.amazonaws.com/files.consumerfinance.gov/f/documents/cfpb_bank-of-america_2023-CFPB-0007_01_2023-07.pdf.

[2] *Id.*

[3] *CFPB Takes Action Against Bank of America for Illegally Charging Junk Fees, Withholding Credit Card Rewards, and Opening Fake Accounts*, Consumer Financial Protection Bureau Newsroom [hereinafter *CFPB Takes Action Against Bank of America*], www.consumerfinance.gov/about-us/newsroom/bank-of-america-for-illegally-charging-junk-fees-withholding-credit-card-rewards-opening-fake-accounts/#:~:text=%E2%80%9CBank%20of%20America%20wrongfully%20withheld,practices%20across%20the%20banking%20system.%E2%80%9D (Published Jul. 11, 2023).

cards."[4] The bank then used these consumer reports "to consider consumers for new credit cards even when the consumers had not applied for or did not want the products and where [BANA] did not otherwise have a permissible purpose for the consumer reports."[5] About this practice, CFPB Director Rohit Chopra said, "[t]hat's essentially taking over someone's identity and exploiting it financially, and it's totally improper."[6]

6.     Amongst the negative impacts to customers caused by BANA's deceptive practices—which the CFPB director called "inexcusable"[7]—the CFPB counted "fees charged; impacts to consumer credit profiles; the loss of control over personal identifying information; the expenditure of consumer time and effort investigating the facts and seeking closure of unwanted accounts; and the need to monitor and mitigate harm going forward."[8]

7.     This same conduct by another large bank, Wells Fargo, led to years of investigations by federal and state authorities that resulted in billions of dollars in penalties and potential criminal liability.[9] Indeed, like at Wells Fargo, where employees used fraud to meet sales goals by using customer information to open unauthorized accounts in customers' names,[10] BANA employees sought to meet sales goals and compensation incentives set by BANA by using customer information to open unauthorized accounts, and charge customers fees associated with those accounts. Yet, despite Wells Fargo being publicly held to account for its fraudulent and deceptive account-opening practices

---

[4] *In the Matter of Bank of America*, *supra* note 1.

[5] *Id.*

[6] Dustin Jones, *Bank of America to pay $250 million for illegal fees, fake accounts*, N.P.R., July 11, 2023, www.npr.org/2023/07/11/1187060652/bank-of-america-250-million-illegal-fees-fake-accounts-fines.

[7] *Id.*

[8] *In the Matter of Bank of America*, *supra* note 1.

[9] Emily Flitter, *The Price of Wells Fargo's Fake Account Scandal Grows by $3 Billion*, N.Y. TIMES, Feb. 21, 2020, https://www.nytimes.com/2020/02/21/business/wells-fargo-settlement.html.

[10] *Id.*

and despite these practices being publicly condemned since at least 2016—seven years ago—BANA persists in its extraction of inflated sales metrics and account fees from its customers through the same or similar illegal account-opening practices.

8.     The negative impacts to customer credit scores caused by BANA's illegal and deceptive account-opening practices are pervasive and long-lasting. Indeed, as was reported about Wells Fargo's deceptive account-opening practices,[11] BANA customers for whom unauthorized accounts were opened have been harmed by interest charges and fees associated with the unauthorized accounts, and have suffered negative impacts to their credit scores due to missing payments on accounts that were opened by BANA without customer authorization. While late payment fees alone are damaging to BANA customers, the appearance of these late payments on customer credit reports can lead to lower credit scores, which in turn may cause lenders to deem affected BANA customers as "high risk" and therefore result in BANA customers paying higher interest rates on credit, as occurred with Wells Fargo customers.[12]

9.     The negative impact to BANA customers' credit scores likely extends beyond BANA customers' finances alone. Credit scores are routinely checked by potential landlords, employers, and cellphone companies. A lower credit score can mean a job opportunity lost, a housing lease placed just out of reach, or a higher-priced phone plan.[13] Unlike the artificially depressed credit score *itself*, which the bank may ameliorate by notifying a credit reporting agency that some of the data the agency relied upon to create the report was false, the damage *resulting* from a low credit score is already done and nearly impossible to undo; while the customers whose credit scores were negatively impacted by BANA's practices may eventually rehabilitate their low credit score, they still suffer from the harms

---

[11] Jim Zarroli, *Wells Fargo's Unauthorized Accounts Likely Hurt Customers' Credit Scores*, N.P.R., Sep. 26, 2016, https://www.npr.org/2016/09/26/495501008/wells-fargos-unauthorized-accounts-likely-hurt-customers-credit-scores.

[12] *Id.*

[13] *Id.*

associated with opportunities that were lost and the high-interest credit that was paid because of the low credit score, which was artificially depressed due to the unauthorized accounts BANA opened.

10.     Because BANA's scheme only works so long as customers do not notice that the bank and its employees have misused customer information to open unauthorized accounts and charge associated fees, Plaintiffs allege that BANA targeted customers who were vulnerable, either due to their ethnicity, English fluency, age, or educational status. This is borne out by investigations into Wells Fargo's unauthorized account-opening practices, which showed that this scheme to juice revenue and other metrics is aimed directly at the bank's most vulnerable customers—immigrants who speak little English, older adults with memory problems, college students, and small businesses.[14]

11.     BANA took advantage of the trust its customers placed in it. Unsatisfied with the profits it had traditionally made from holding customers money and extending lines of credit, BANA used unauthorized accounts to squeeze still more improper and unlawful fees and penalties from its customers.  BANA did this for nearly a decade, until the CFPB intervened.  Yet, the harms of Plaintiffs and the Class remain.

12.     BANA's misleading, years-long scheme to boost profits by opening new accounts without customers' consent and by charging various fees on those accounts, violated federal and state law.  Plaintiffs and the Class seek all available relief.

**THE PARTIES**

13.     Plaintiff Jessica Stripling is a resident of Orland Hills, Illinois.

14.     Plaintiff Miedo Donque is a resident of Rancho Santa Margarita, California.

15.     Defendant Bank of America, N.A. is a national bank with its headquarters and principal place of business in Charlotte, North Carolina. Among other things, BANA is engaged in the business of providing retail banking services to consumers. BANA operates banking centers, and thus conducts business, throughout the State of Illinois, including within this District.

---

[14] Stacy Cowley, *'Lions Hunting Zebras': Ex-Wells Fargo Bankers Describe Abuses*, N.Y. TIMES, Oct. 20, 2016, https://www.nytimes.com/2016/10/21/business/dealbook/lions-hunting-zebras-ex-wells-fargo-bankers-describe-abuses.html.

16.     This Court has original jurisdiction of this action under the Class Action Fairness Act of 2005. Pursuant to 28 U.S.C. §§ 1332(d)(2) and (6), this Court has original jurisdiction because the aggregate claims of the putative class members exceed $5 million, exclusive of interest and costs, and at least one of the members of the proposed classes is a citizen of a different state than BANA.

17.     This Court has jurisdiction over BANA because it regularly conducts and/or solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from products and/or services provided to persons in this District and in this State.

18.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because BANA is subject to personal jurisdiction here and regularly conducts business in the District, and because a substantial part of the events or omissions giving rise to the claims asserted herein occurred in this District.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

19.     BANA is a national bank headquartered in Charlotte, North Carolina, with branches and ATMs located in 38 states and the District of Columbia. BANA has more than $3 trillion in total assets, making it the second largest bank in the United States. BANA operates more than 3,900 full-service bank branches nationwide, through which it offers deposit and credit products.

20.     BANA requires its employees to maximize the sale of new or additional banking Products to its customers. Since as early as January 1, 2012, BANA considered the number of new Products that were opened and used by customers when evaluating BANA employees' overall performance and incentive compensation. In response to sales pressure or to obtain incentive rewards, BANA's employees submitted applications for and issued credit cards and opened bank accounts without Plaintiffs' consent.

21.     It was standard practice for BANA to obtain consumer reports[15] while considering customers for new credit cards. BANA then used or obtained consumer reports to consider Plaintiffs

---

[15] "The term 'consumer report' means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or

for new credit cards even when Plaintiffs had not applied for or did not want the products and where BANA did not otherwise have a permissible purpose for the consumer reports. Instead, BANA applied for the credit cards on behalf of Plaintiffs without their consent.

22.    Additionally, BANA generated associated fees from credit card accounts and other accounts opened without Plaintiffs' consent.

23.    These practices by BANA harmed Plaintiffs including in the form of fees charged, negative impacts to consumer credit profiles, the loss of control over personal identifying information, the expenditure of Plaintiffs' time and effort investigating the facts and seeking closure of unwanted accounts, and the need to monitor and mitigate harm going forward.

24.    BANA knew that its evaluation and incentive compensation for its employees, which was based on the sheer number of new or additional Products in which BANA employees were able to enroll Plaintiffs, resulted in opening unauthorized accounts and in charging unjustified fees and penalties. Because the bank expressly included an accounting of new or additional Products opened in its regular evaluation and compensation programs for its employees, BANA had the opportunity to know and did in fact know that its employees were opening unauthorized accounts and charging associated fees at extraordinary rates not borne by the market or the bank's own industry experience.

## EXPERIENCES OF THE NAMED PLAINTIFFS

### A.    Jessica Stripling

25.    Ms. Stripling has been a BANA customer for approximately the last 3.5 years.  She has maintained a single BANA checking account during that period. Ms. Stripling receives her monthly statements from her legitimate, authorized BANA checking account electronically. On April 6, 2023, Ms. Stripling received a letter from BANA indicating that certain items deposited into a BANA checking account that she did not authorize, have any knowledge of, and had never used, had been

---

expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for [authorized financial services enumerated by law]." Fair Credit Reporting Act, 15 U.S.C.A. § 1681(a) (West).

returned unpaid. Accordingly, Ms. Stripling immediately contacted BANA to inform them that she did not open, authorize, nor have any knowledge of a second checking account at BANA in her name. Nevertheless, she started receiving monthly hard copy bank statements in the mail from BANA regarding this unauthorized phantom checking account. Ms. Stripling repeatedly informed BANA that she did not authorize or otherwise ever use this unauthorized phantom account. Despite Ms. Stripling's protestations, BANA did not close the unauthorized phantom account. Instead, BANA sought to recover the phantom account's negative balance and months of accrued service fees from Ms. Stripling. As a result of BANA's conduct, Ms. Stripling was harmed by being charged service fees associated with the unauthorized checking account, expending time and effort investigating the facts and seeking closure of the unauthorized account, and monitoring her accounts to ensure BANA does not open an unauthorized account on her behalf again.

**B.    Miedo Donque**

26.    Mr. Donque has been a BANA customer for 20 years, since approximately 2003. In July 2021, he was surprised to receive a "Billy Pay Alert" from BANA requesting that he pay the bill for a credit card that Mr. Donque did not open or authorize. Mr. Donque promptly contacted BANA to inform the bank that he did not open, authorize, nor have any knowledge of the unauthorized credit card account. In response, Mr. Miedo expected BANA to immediately close the unauthorized account. However, BANA continued to seek payment from Mr. Donque for the unauthorized account. Mr. Donque repeatedly informed BANA that he did not authorize nor otherwise ever use this unauthorized phantom credit card account. Despite Mr. Donque's efforts, BANA sought payment from him on the unauthorized account through and including February 2022—seven months after Mr. Donque requested the unauthorized account be closed. As a result of BANA's conduct, Mr. Donque was harmed in the form of minimum payment charges associated with the unauthorized credit card, interest charges associated with the unauthorized credit card, negative impacts to Mr. Donque's credit score associated with the sudden opening and closure of an account that he did not authorize, the loss of control over personal identifying information, the expenditure of time and effort

investigating the facts and seeking the closure of the unauthorized credit card, and the need to monitor and mitigate these harms going forward.

## CLASS ACTION ALLEGATIONS

27.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs propose the following Class definition, subject to amendment as appropriate:

**Class**: All persons in the United States who had a credit card or bank account opened without their authorization by BANA or a BANA employee.

28.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs propose the following State Subclass definitions, subject to amendment as appropriate:

**Illinois Subclass**: All persons in Illinois who had a credit card or bank account opened without their authorization by BANA or a BANA employee.

**California Subclass**: All persons in California who had a credit card or bank account opened without their authorization by BANA or a BANA employee.

29.     Excluded from the Class, Illinois Subclass, and California Subclass (collectively, the "Classes") are BANA's officers, directors, and employees; any entity in which BANA has a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of BANA. Excluded also from the Classes are members of the judiciary to whom this case is assigned, their families, and members of their staff.

30.     <u>Numerosity</u>: The members of the proposed Classes are so numerous that individual joinder of all members is impracticable. The number of BANA's branches nationwide—more than 3,900—alone supports that many thousands of current and former BANA customers are likely included in the Classes. The exact number and identities of the members of the proposed Classes are unknown at this time, but can be ascertained through appropriate discovery, which is exclusively in Defendants' possession.

31.     <u>Common Questions of Law and Fact Predominate</u>: There are many questions of law and fact common to Plaintiffs and the Classes and those questions substantially predominate over any questions that may affect individual Class members. Common questions of law and fact include, but are not limited to:

a. Did BANA engage in unlawful practices in opening unauthorized accounts for customers?

b. Did BANA engage in unlawful practices in charging customers fees associated with unauthorized accounts for its customers?

c. Did BANA know or should BANA have known of its employees' unlawful practices in opening unauthorized accounts for its customers?

d. Did BANA promote its Products by making false or incomplete statements about BANA's purposes in obtaining and using Plaintiffs' consumer reports, knowing that such statements were based on false and incomplete information?

e. Did BANA omit material facts about authorized or unauthorized accounts and associated fees, such as the conditions under which new accounts would be opened for customers and customers would be charged fees associated with such accounts?

f. Did BANA falsely state or misrepresent material facts about authorized or unauthorized accounts and associated fees, such as the conditions under which new accounts would be opened for customers and customers would be charged fees associated with such accounts?

g. Did BANA violate the federal laws detailed herein?

h. Did BANA violate Illinois law?

i. Did BANA violate California law?

j. Was BANA unjustly enriched as a result of its improper conduct?

32. <u>Typicality</u>: Plaintiffs' claims are typical of the claims of the members of the Classes. Plaintiffs and all members of the Classes have been similarly affected by the actions of BANA. BANA's conduct as described herein is the same or substantially the same for Plaintiffs and all members of the Class. BANA opened unauthorized accounts and charged associated fees to Plaintiffs and the Classes in a systematic and widespread way; and have established systematic and automated policies and practices to charge fees, to evaluate and incentivize BANA employees to open accounts, and to enroll customers in bank Products. Thus, the experiences of Plaintiffs are typical.

33.     <u>Adequacy of Representation</u>: Plaintiffs will fairly and adequately represent and protect the interests of the Classes. Plaintiffs have retained counsel at Tycko & Zavareei LLP with substantial experience in prosecuting complex and consumer class action litigation. Plaintiffs and their counsel are committed to vigorously prosecuting this action on behalf of the Classes and have the financial resources to do so.

34.     <u>Superiority of Class Action</u>: Plaintiffs and the members of the Class suffered and will continue to suffer harm as a result of Defendant's unlawful and wrongful conduct.  A class action is superior to other available methods for the fair and efficient adjudication of the present controversy. Individual joinder of all members of the Classes is impractical.  Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed.  Individual litigation magnifies the delay and expense to all parties, as well as the court system, in resolving the controversies engendered by Defendant's common course of conduct.  The class action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and equitable handling of all Class members' claims over which it has jurisdiction in a single forum.

35.     <u>Risk of Inconsistent or Varying Adjudication</u>: Class treatment is proper and this action should be maintained as a class action because the risks of separate actions by individual members of the Classes would create a risk of: (a) inconsistent or varying adjudications with respect to individual Class members which would establish incompatible standards of conduct for Defendant as the party opposing the Classes; and/or (b) adjudications with respect to individual Class members would, as a practical matter, be dispositive of the interests of other Class members not party to the adjudication or would substantially impair or impede their ability to protect their interests.

36.     <u>Action Generally Applicable to Classes as a Whole</u>: Defendant, as the party that may potentially oppose certification of the Classes, has acted or refused to act on grounds generally applicable to the Classes, thereby making relief appropriate with respect to them as a whole.

## DISCOVERY RULE AND FRAUDULENT CONCEALMENT TOLLING

37.     While Defendant began opening unauthorized accounts and charging customers associated fees in or around January 2012, on information and belief, Defendant has continued charging deceptive, unlawful fees associated with unauthorized accounts to the present day.

38.     The full extent of Defendant's omissions and misrepresentations is still not known. Defendant has never made public the details of its systemic opening of unauthorized accounts and charging associated fees.  Defendant knew its employees opened fraudulent, unauthorized accounts, but nevertheless charged customers fees associated with those unauthorized accounts, and concealed the fraud to protect their reputation and financial interests. Indeed, the fact that Defendant's deception was only publicly revealed in July 2023 when the CFPB made public its enforcement action against the bank, indicates that Defendant always intended to withhold this information from its customers.

39.     Class members who were enrolled in unauthorized accounts and who were charged fees associated with those unauthorized accounts outside of the applicable statute of limitations could not have discovered through the exercise of reasonable diligence that Defendant's purpose in obtaining and using Class Members' consumer reports was to open unauthorized accounts ostensibly on behalf of Class Members and was concealing the conduct complained of herein.

40.     For these reasons, all applicable statutes of limitations have been tolled by operation of the discovery rule with respect to all claims set forth below.  And all applicable statutes of limitation have also been tolled by Defendant's knowing and active fraudulent concealment of the facts alleged herein throughout the time period relevant to this action.

### FIRST CAUSE OF ACTION
**Violations of 15 U.S.C. § 1693**
**(Electronic Funds Transfer Act)**
**By Plaintiffs and on Behalf of the Classes**

41.     Plaintiffs restate and incorporate by reference the allegations in all Paragraphs above as though fully set forth herein.

42.     The Electronic Funds Transfers Act ("EFTA"), 15 U.S.C. § 1693, *et seq.*, regulates electronic fund and remittance transfer systems and was passed to protect individual consumers engaging in electronic fund transfers (EFTs).

43.     "No person may issue to a consumer any card, code, or other means of access to such consumer's account for the purpose of initiating an electronic fund transfer other than (1) in response to a request or application therefor; or (2) as a renewal of, or in substitution for, an accepted card, code, or other means of access, whether issued by the initial issuer or a successor." 15 U.S.C.A. § 1693i(a).

44.     BANA is a "person" as defined by EFTA.

45.     BANA violated EFTA each time that it opened unauthorized accounts, including credit cards, debit cards, checking accounts, and savings accounts, without the consent of Plaintiffs and Class Members, since such accounts were not requested or applied for by Plaintiff and Class Members.

46.     As a result of this conduct, Plaintiffs and the Classes seek all relief available under the Electronic Funds Transfer Act, including actual damages and compensation for fees associated with the unauthorized accounts, incidental and consequential damages, punitive damages in an amount adequate to deter such conduct in the future, injunctive relief, prejudgment interest, attorneys' fees and costs, and all other relief permitted by law.

47.     Pursuant to 15 U.S.C. § 1693(m), BANA is liable for actual damages, an amount to be determined by the Court related to the frequency, persistence, and other factors of BANA's violations, plus attorneys' fees and costs.

**SECOND CAUSE OF ACTION**
**Violations of 15 U.S.C. § 1681**
**(Fair Credit Reporting Act)**
**By Plaintiffs and on Behalf of the Classes**

48.     Plaintiffs restate and incorporate by reference the allegations in all Paragraphs above as though fully set forth herein.

49.     Section 604(f) of FCRA mandates that consumer reports be used or obtained only for permissible purposes enumerated in the statute. 15 U.S.C. § 1681b(f).

50.     Under FCRA, a "person shall not use or obtain a consumer report for any purpose unless—(1) the consumer report is obtained for a purpose for which the consumer report is authorized to be furnished" and one other condition is met. 15 U.S.C. § 1681b(f).

51.     The authorized purposes specified in FCRA include consumer reports furnished "in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer." 15 U.S.C. § 1681b(a)(3)(A).

52.     BANA is required by 15 U.S.C. §§ 1681(b), 1681(n), and 1681(o) to refrain from obtaining or using consumer reports from consumer reporting agencies under false pretenses, and without proper authorization from the consumer who is the subject of the report.

53.     Because BANA submitted applications and opened unauthorized accounts without the consent of Plaintiffs and the Class Members, BANA's use of the consumer reports of Plaintiffs and the Class Members for this purpose could not have been and was not a "permissible purpose" pursuant to § 604(f) of FCRA, 15 U.S.C. § 1681b(f).

54.     By using or obtaining consumer reports without a permissible purpose, BANA violated § 604(f) of FCRA, 15 U.S.C. § 1681b(f).

55.     As a result of this conduct, Plaintiff and the Classes seek all available damages and relief under FCRA, including actual damages and compensation for fees associated with the unauthorized accounts, incidental and consequential damages, punitive damages in an amount adequate to deter such conduct in the future, statutory damages, injunctive relief, prejudgment interest, attorneys' fees and costs, and all other relief permitted by law.

### THIRD CAUSE OF ACTION
**Violations of 15 U.S.C. § 1642; 12 C.F.R. § 1026.12(a)**
**(Truth in Lending Act)**
**By Plaintiffs and on Behalf of the Classes**

56. Plaintiffs restate and incorporate by reference the allegations in all Paragraphs above as though fully set forth herein.

57. Under TILA, "no credit card shall be issued except in response to a request or application therefor." 15 U.S.C. § 1642. TILA's Regulation Z requires that no credit card shall be issued to any person except in response to an oral or written request or application for the card; or as a renewal of, or substitute for, an accepted credit card. 12 C.F.R. § 1026.12(a).

58. By issuing credit cards or debit cards to consumers without the consumers' consent and not in response to an oral or written request or application for the card or as a renewal of, or substitute for, an accepted credit card or debit card, BANA violated Regulation Z, 15 U.S.C. § 1642; 12 C.F.R. § 1026.12(a).

59. As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiff and the Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages as described herein and as will be proved at trial.

60. Plaintiffs and Class Members seek all relief allowed by law and equity, including actual damages and compensation for fees associated with the unauthorized accounts, incidental and consequential damages, punitive damages in an amount adequate to deter such conduct in the future, statutory damages, injunctive relief, prejudgment interest, attorneys' fees and costs, and all other relief permitted by law.

## FOURTH CAUSE OF ACTION
### Unjust Enrichment
### By Plaintiffs and on Behalf of the Classes

61. Plaintiffs restate and incorporate by reference the allegations in all Paragraphs above as though fully set forth herein.

62. As result of BANA's unlawful and deceptive actions described in the foregoing paragraphs, BANA has unjustly retained a benefit to the detriment of Plaintiff and the Class Members. BANA has unjustly retained fees and interest accrued from unauthorized accounts that it opened without the consent of Plaintiffs and the Classes and to the detriment of Plaintiffs and the Classes.

63.     BANA's retention of these ill-gotten gains violates fundamental principles of justice, equity, and good conscience, since Plaintiffs and the Classes were deceived into payment.

64.     To the extent Plaintiffs and the Class Members' claims of unjust enrichment do not lie as standalone claims, Plaintiffs and Class Members plead their claims for unjust enrichment as quasi-contract claims seeking restitution.

65.     As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiffs and the Class Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages as described herein and as will be proved at trial.

66.     Plaintiffs and Class Members seek all relief allowed by law and equity, including restitution and compensation for fees associated with the unauthorized accounts and all other relief permitted by law.

**FIFTH CAUSE OF ACTION**
**Violations of 815 Ill. Comp Stat. 505/1**
**(Illinois Deceptive Trade Practices Act)**
**Misrepresentation and/or Omission**
**By Plaintiffs and on Behalf of the Illinois Subclass**

67.     Plaintiff Stripling restates and incorporates by reference the allegations in all Paragraphs above as though fully set forth herein.

68.     Plaintiff Stripling brings this Claim on behalf of herself and the Illinois Subclass.

69.     At all times relevant hereto, Plaintiff Stripling, Class Members, and BANA were either natural persons or their legal representatives, partnerships, corporations, companies, trusts, business entities, or associations. 815 Ill. Comp. Stat. 505/1(c).

70.     Plaintiff Stripling and the Class Members are also consumers as defined in 815 Ill. Comp. Stat. 505/1(e).

71.     The ICFA prohibits "unfair or deceptive acts or practices . . . with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce[.]" 815 Ill. Comp. Stat. 505/2.

72. Under the ICFA, "trade" or "commerce" is the "advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." 815 Ill. Comp. Stat. 505/1(f).

73. At all times relevant hereto, BANA engaged in the advertising, offering for sale, sale, and/or distribution of property and services, in the form of financial products and services.

74. Plaintiff Stripling and the Class Members purchased the Products and services at issue herein for their use or that of members of their households.

75. The ICFA, 815 Ill Comp. Stat. 505/1, *et seq.*, provides in pertinent part:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

76. BANA, by and through its employees, agents, and/or servants, engaged in unlawful schemes and courses of conduct with regard to the sale and marketing of its Products by unfairly engaging in the following:

a. Defendant opened unauthorized bank accounts for Plaintiff and the Class Members;

b. Defendant charged Plaintiff and the Class Members fees associated with the unauthorized accounts that it opened for Plaintiff and the Class Members;

c. Defendant obtained consumer reports and submitted applications for Plaintiff and the Class Members without the consent of Plaintiff and the Class Members. This conduct, with little if any utility, is unfair when weighed against the harm to Plaintiff and the Class Members, including harms in the form of fees charged and impacts to their credit reports;

d. Defendant's failure to notify Plaintiff and the Class Members that it opened unauthorized accounts on their behalf but without their consent;

e. Defendant's failure to notify Plaintiff and the Class Members that it charged them fees associated with the unauthorized accounts the bank opened on their behalf but without their consent;

f.  Defendant's design and implementation of an employee evaluation and compensation program that rewarded BANA employees for the sheer number of accounts it opened on behalf of Plaintiff and the Class, even if those accounts were opened without authorization of Plaintiff and the Class;

g.  Defendant's failure to correct BANA employees who opened unauthorized accounts without the consent of Plaintiff and the Class, including through the deceptive, unfair conduct described above;

h.  Defendant's failure to notify Plaintiff and the Class Members that BANA employees had opened unauthorized accounts without the consent of Plaintiff and the Class Members, including through the deceptive, unfair conduct described above;

i.  Defendant's failure to comply with its obligations under federal law, including with 15 U.S.C. § 1693 (Electronic Funds Transfer Act); Violations of 15 U.S.C. § 1681 (Fair Credit Reporting Act); and 15 U.S.C. § 1642; 12 C.F.R. § 1026.12(a) (Truth in Lending Act and Regulation Z);

j.  Defendant's deceptive, unfair practices also led to substantial injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because Plaintiff and the Class Members could not know of Defendant's deceptive scheme to open unauthorized accounts and charge customers associated fees, including by obtaining consumer reports and using such reports to submit credit applications without the consent of Plaintiff and the Class Members, such that consumers could not have reasonably avoided the harms that Defendant caused;

k.  Misrepresenting that it would comply with common law and statutory duties pertaining to the financial accounts of Plaintiff and the Class Members, including duties imposed by 15 U.S.C. § 1693 (Electronic Funds Transfer Act); 15 U.S.C. § 1681 (Fair Credit Reporting Act); and 15 U.S.C. § 1642; 12 C.F.R. § 1026.12(a) (Truth in Lending Act and Regulation Z);

l.  Omitting, suppressing, and concealing the material fact that it opened unauthorized accounts for Plaintiff and the Class Members;

m.  Omitting, suppressing, and concealing the material fact that it charged fees associated with the unauthorized accounts it opened for Plaintiff and the Class Members;

n.  Omitting, suppressing, and concealing the material fact that it obtained consumer reports from Plaintiff and the Class Members to apply for the unauthorized accounts it opened for Plaintiff and the Class Members;

o.  Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the financial accounts of Plaintiff and the Class, including duties imposed by 15 U.S.C. § 1693 (Electronic Funds Transfer

Act); Violations of 15 U.S.C. § 1681 (Fair Credit Reporting Act); and 15 U.S.C. § 1642; 12 C.F.R. § 1026.12(a) (Truth in Lending Act and Regulation Z.; and

p. Other ways to be discovered and proved at trial.

77. BANA engaged in such unlawful course of conduct with the intent to induce Plaintiff Stripling and the Class Members to provide access to their consumer reports, to authorize opening new accounts, and to pay fees associated with such accounts.

78. The fact that BANA misrepresented, concealed, suppressed, or omitted information regarding its purposes for obtaining and using customers' consumer reports, opening unauthorized new accounts, and charging fees associated with such accounts, as alleged above, was material in that statements from BANA employees regarding consumer reports, account opening and closing, and associated account fees is the type of information upon which a reasonable consumer is expected to rely in making a decision of whether to open or close an account, or pay fees associated with such accounts.

79. BANA's acts or practices alleged herein offend the clearly stated public policy prohibiting such practices as set forth in 15 U.S.C. § 1693 (Electronic Funds Transfer Act); Violations of 15 U.S.C. § 1681 (Fair Credit Reporting Act); and 15 U.S.C. § 1642; 12 C.F.R. § 1026.12(a) (Truth in Lending Act and Regulation Z).

80. BANA's acts or practices were likely to cause, and did cause, substantial injury to consumers as they resulted in BANA receiving revenue to which BANA is not entitled. The injuries caused by BANA's acts or practices, namely consumers' monetary losses, are not outweighed by any countervailing benefit to consumers or competition. BANA's unfair acts served no purpose other than to increase its own profits.

81. Defendant intended to mislead Plaintiff and the Class Members and induce them to rely on their misrepresentations and material omissions of fact as alleged herein.

82. BANA's misconduct, including its misrepresentations and omission of material facts alleged herein, took place in connection with BANA's course of trade or commerce in Illinois, arose out of transactions that occurred in Illinois, and/or harmed individuals located in Illinois.

83.    BANA intended for Plaintiff Stripling and Class Members to purchase its Products and pay associated fees in reliance on BANA's unfair acts and/or practices.

84.    Had Defendant disclosed to Plaintiff and the Class Members that BANA employees had opened unauthorized accounts without the consent of Plaintiffs and the Class Members, Defendant would have been unable to continue incentivizing its employees to make new sales—which contribute significantly to the bank's profits—and it would have been forced to close accounts, refund fees *en masse*, and comply with the law. Accordingly, Plaintiff and the Class Members acted reasonably in relying on Defendant's misrepresentations and material omissions of fact, the truth of which they could not have discovered.

85.    Plaintiff Stripling and the Class Members did not open the unauthorized accounts and those accounts would not have been opened, had BANA not misrepresented its purposes for obtaining and using customers' consumer reports and misrepresented the authorization or legitimacy of the phantom accounts opened.

86.    The deceptive acts and/or practices of BANA violate ICFA, 815 Ill. Comp. Stat. 505/2.

87.    As a direct and proximate result of the unfair acts and/or practices of BANA, Plaintiff Stripling and Class Members were damaged in that they did not receive the benefit of their bargain and paid fees on accounts opened by BANA without authorization.

88.    Plaintiff Stripling and Class Members request that this Court enjoin BANA from continuing to violate the ICFA as discussed herein. Plaintiff Stripling and Class Members also seek all damages permitted by law, including compensation for fees associated with the unauthorized accounts, incidental and consequential damages, punitive damages in an amount adequate to deter such conduct in the future, injunctive relief, prejudgment interest, attorneys' fees, and all other relief permitted by law.

89.     Plaintiff Stripling restates and incorporates by reference the allegations in all Paragraphs above as though fully set forth herein.

90.     Plaintiff Stripling brings this Claim on behalf of herself and the Illinois Subclass.

91.     Plaintiff Stripling brings this Claim in the alternative to the Fifth Cause of Action.

92.     At all times relevant hereto, Plaintiff Stripling, Class Members, and BANA were either natural persons or their legal representatives, partnerships, corporations, companies, trusts, business entities, or associations. 815 Ill. Comp. Stat. 505/1(c).

93.     Plaintiff Stripling and the Class Members are also consumers as defined in 815 Ill. Comp. Stat. 505/1(e).

94.     The ICFA prohibits "unfair or deceptive acts or practices . . . with intent that others rely upon the concealment, suppression or omission of such material fact . . . in the conduct of any trade or commerce[.]" 815 Ill. Comp. Stat. 505/2.

95.     Under the ICFA, "trade" or "commerce" is the "advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State." 815 Ill. Comp. Stat. 505/1(f).

96.     At all times relevant hereto, BANA engaged in the advertising, offering for sale, sale, and/or distribution of property and services, in the form of financial products and services.

97.     Plaintiff Stripling and the Class Members purchased the Products and services at issue herein for their use or that of members of their households.

98.     The ICFA, 815 Ill Comp. Stat. 505/1, *et seq.*, provides in pertinent part:

Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in

Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

99. BANA, by and through its employees, agents, and/or servants, engaged in unlawful schemes and courses of conduct with regard to the sale and marketing of its Products by unfairly engaging in the following:

a. Defendant opened unauthorized bank accounts without the authorization of Plaintiff and the Class Members;

b. Defendant charged Plaintiff and the Class Members fees associated with the unauthorized accounts that it opened for Plaintiff and the Class Members;

c. Defendant obtained consumer reports and submitted applications for Plaintiff and the Class Members without the authorization of Plaintiff and the Class Members. This conduct, with little if any utility, is unfair when weighed against the harm to Plaintiff and the Class Members, including harms in the form of fees charged and impacts to their credit reports;

d. Defendant's failure to notify Plaintiff and the Class Members that it opened unauthorized accounts on their behalf but without their consent;

e. Defendant's failure to notify Plaintiff and the Class Members that it charged them fees associated with the unauthorized accounts the bank opened on their behalf but without their consent;

f. Defendant's design and implementation of an employee evaluation and compensation program that rewarded BANA employees for the sheer number of accounts it opened on behalf of Plaintiff and the Class, even if those accounts were opened without the authorization of Plaintiff and the Class;

g. Defendant's failure to correct BANA employees who opened unauthorized accounts for Plaintiff and the Class, including through the deceptive, unfair conduct described above;

h. Defendant's failure to notify Plaintiff and the Class Members that BANA employees had opened unauthorized accounts for Plaintiff and the Class Members, including through the deceptive, unfair conduct described above;

i. Defendant's failure to comply with its obligations under federal law, including with 15 U.S.C. § 1693 (Electronic Funds Transfer Act); Violations of 15 U.S.C. § 1681 (Fair Credit Reporting Act); and 15 U.S.C. § 1642; 12 C.F.R. § 1026.12(a) (Truth in Lending Act and Regulation Z);

j. Defendant's deceptive, unfair practices also led to substantial injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because Plaintiff and the Class Members could not know of Defendant's deceptive scheme to open unauthorized accounts and charge customers associated fees, including by obtaining consumer reports and using such reports to submit credit applications without the consent of Plaintiff and the Class Members, consumers could not have reasonably avoided the harms that Defendant caused;

k. Misrepresenting that it would comply with common law and statutory duties pertaining to the financial accounts of Plaintiff and the Class Members, including duties imposed by 15 U.S.C. § 1693 (Electronic Funds Transfer Act); 15 U.S.C. § 1681 (Fair Credit Reporting Act); and 15 U.S.C. § 1642; 12 C.F.R. § 1026.12(a) (Truth in Lending Act and Regulation Z);

l. Omitting, suppressing, and concealing the material fact that it opened unauthorized accounts without the consent of Plaintiff and the Class Members;

m. Omitting, suppressing, and concealing the material fact that it charged fees associated with the unauthorized accounts it opened without the authorization of Plaintiff and the Class Members;

n. Omitting, suppressing, and concealing the material fact that it obtained consumer reports from Plaintiff and the Class Members to apply for the unauthorized accounts it opened for Plaintiff and the Class Members;

o. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the financial accounts of Plaintiff and the Class, including duties imposed by 15 U.S.C. § 1693 (Electronic Funds Transfer Act); Violations of 15 U.S.C. § 1681 (Fair Credit Reporting Act); and 15 U.S.C. § 1642; 12 C.F.R. § 1026.12(a) (Truth in Lending Act and Regulation Z.; and

p. Other ways to be discovered and proved at trial.

100. BANA engaged in such unlawful course of conduct with the intent to induce Plaintiff Stripling and the Class Members to provide access to their consumer reports, to authorize opening new accounts, and to pay fees associated with such accounts.

101. BANA's acts or practices are "unfair" as they offend public policy, are immoral, unethical, oppressive, or unscrupulous, and/or cause substantial injury to consumers.

102. BANA's acts or practices alleged herein offend the clearly stated public policy prohibiting such practices as set forth in 15 U.S.C. § 1693 (Electronic Funds Transfer Act); Violations

of 15 U.S.C. § 1681 (Fair Credit Reporting Act); and 15 U.S.C. § 1642; 12 C.F.R. § 1026.12(a) (Truth in Lending Act and Regulation Z).

103. BANA's acts or practices were likely to cause, and did cause, substantial injury to consumers as they resulted in BANA receiving revenue to which BANA is not entitled. The injuries caused by BANA's acts or practices, namely consumers' monetary losses, are not outweighed by any countervailing benefit to consumers or competition. BANA's unfair acts served no purpose other than to increase its own profits.

104. Defendant intended to mislead Plaintiff and the Class Members and induce them to rely on their misrepresentations and material omissions of fact as alleged herein.

105. BANA's unfair acts and/or practices alleged herein took place in connection with BANA's course of trade or commerce in Illinois, arose out of transactions that occurred in Illinois, and/or harmed individuals located in Illinois.

106. BANA intended for Plaintiff Stripling and Class Members to purchase its Products and pay associated fees in reliance on BANA's unfair acts and/or practices.

107. Had Defendant disclosed to Plaintiff and the Class Members that BANA employees had opened unauthorized accounts without the consent of Plaintiffs and the Class Members, Defendant would have been unable to continue incentivizing its employees to make new sales—which contribute significantly to the bank's profits—and it would have been forced to close accounts, refund fees *en masse*, and comply with the law. Accordingly, Plaintiff and the Class Members acted reasonably in relying on Defendant's misrepresentations and material omissions of fact, the truth of which they could not have discovered.

108. Plaintiff Stripling and the Class Members did not open the unauthorized accounts and those accounts would not have been opened, had BANA not misrepresented its purposes for obtaining and using customers' consumer reports and misrepresented the authorization or legitimacy of the phantom accounts opened.

109. The unfair acts and/or practices of BANA violate ICFA, 815 Ill. Comp. Stat. 505/2.

110.    As a direct and proximate result of the unfair acts and/or practices of BANA, Plaintiff Stripling and Class Members were damaged in that they did not receive the benefit of their bargain and paid fees on accounts opened by BANA without authorization.

111.    Plaintiff Stripling and Class Members request that this Court enjoin BANA from continuing to violate the ICFA as discussed herein. Plaintiff Stripling and Class Members also seek all damages permitted by law, including compensation for fees associated with the unauthorized accounts, incidental and consequential damages, punitive damages in an amount adequate to deter such conduct in the future, injunctive relief, prejudgment interest, attorneys' fees, and all other relief permitted by law.

**SEVENTH CAUSE OF ACTION**
**Violations of Cal. Civil Code § 17200**
**(California Unfair Competition Law)**
**By Plaintiff and on Behalf of the California Subclass**

112.    Plaintiff Donque restates and incorporates by reference the allegations in all Paragraphs above as though fully set forth herein.

113.    Defendant is a "person" as defined by Cal. Bus. & Prof. Code § 17201.

114.    Defendant violated Cal. Bus. & Prof. Code §§ 17200, *et seq.* ("UCL") by engaging in unlawful, unfair, and deceptive business acts and practices.

115.    Defendant's unlawful, unfair acts and deceptive acts and practices include:

   a.    Defendant opened bank accounts without the authorization of Plaintiff and the California Subclass Members;

   b.    Defendant charged Plaintiff and the California Subclass Members fees associated with the accounts that it opened without the authorization of Plaintiff and the California Subclass Members;

   c.    Defendant obtained consumer reports and submitted applications for Plaintiff and the California Subclass Members without the authorization of Plaintiff and the California Subclass Members. This conduct, with little if any utility, is unfair when weighed against the harm to Plaintiff and the California Subclass Members, including harms in the form of fees charged and impacts to their credit reports;

   d.    Defendant's failure to notify Plaintiff and the California Subclass Members that it opened unauthorized accounts on their behalf but without their consent;

e.  Defendant's failure to notify Plaintiff and the California Subclass Members that it charged them fees associated with the unauthorized accounts the bank opened on their behalf but without their consent;

f.  Defendant's design and implementation of an employee evaluation and compensation program that rewarded BANA employees for the sheer number of accounts it opened on behalf of Plaintiff and the California Subclass, even if those accounts were opened without the authorization of Plaintiff and the California Subclass;

g.  Defendant's failure to correct BANA employees who opened accounts without the authorization of Plaintiff and the California Subclass, including through the deceptive, unfair conduct described above;

h.  Defendant's failure to notify Plaintiff and the California Subclass that BANA employees had opened unauthorized accounts for Plaintiff and the California Subclass, including through the deceptive, unfair conduct described above;

i.  Defendant's failure to comply with its obligations under federal law, including with 15 U.S.C. § 1693 (Electronic Funds Transfer Act); Violations of 15 U.S.C. § 1681 (Fair Credit Reporting Act); and 15 U.S.C. § 1642; 12 C.F.R. § 1026.12(a) (Truth in Lending Act and Regulation Z);

j.  Defendant's deceptive, unfair practices also led to substantial injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because Plaintiff and the California Subclass Members could not know of Defendant's deceptive scheme to open unauthorized accounts and charge customers associated fees, including by obtaining consumer reports and using such reports to submit credit applications without the authorization of Plaintiff and the California Subclass, consumers could not have reasonably avoided the harms that Defendant caused;

k.  Misrepresenting that it would comply with common law and statutory duties pertaining to the financial accounts of Plaintiff and the California Subclass, including duties imposed by 15 U.S.C. § 1693 (Electronic Funds Transfer Act); Violations of 15 U.S.C. § 1681 (Fair Credit Reporting Act); and 15 U.S.C. § 1642; 12 C.F.R. § 1026.12(a) (Truth in Lending Act and Regulation Z);

l.  Omitting, suppressing, and concealing the material fact that it opened unauthorized accounts for Plaintiff and the California Subclass;

m.  Omitting, suppressing, and concealing the material fact that it charged fees associated with the unauthorized accounts it opened for Plaintiff and the California Subclass;

n. Omitting, suppressing, and concealing the material fact that it obtained consumer reports from Plaintiff and the California Subclass to apply for the unauthorized accounts it opened for Plaintiff and the California Subclass;

o. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the financial accounts of Plaintiff and the California Subclass, including duties imposed by 15 U.S.C. § 1693 (Electronic Funds Transfer Act); Violations of 15 U.S.C. § 1681 (Fair Credit Reporting Act); and 15 U.S.C. § 1642; 12 C.F.R. § 1026.12(a) (Truth in Lending Act and Regulation Z.; and

p. Other ways to be discovered and proved at trial.

116. Defendant's representations and material omissions of fact, as alleged herein, to Plaintiff and the California Subclass Members were material because they were likely to deceive reasonable consumers about the purpose for obtaining consumer reports, the submission of applications for unauthorized accounts without the consent of Plaintiff and the California Subclass, the opening of unauthorized accounts without the consent of Plaintiff and the California Subclass, and the charging of fees associated with unauthorized accounts opened without the consent of Plaintiff and the California Subclass.

117. Defendant intended to mislead Plaintiff and the California Subclass Members and induce them to rely on their misrepresentations and material omissions of fact as alleged herein.

118. Had Defendant disclosed to Plaintiff and the California Subclass Members that BANA employees had opened unauthorized accounts with the consent of Plaintiff and the California Subclass, Defendant would have been unable to continue incentivizing its employees to make new sales—which contribute significantly to the bank's profits—and it would have been forced to close accounts, refund fees *en masse*, and comply with the law. Accordingly, Plaintiff and the California Subclass Members acted reasonably in relying on Defendant's misrepresentations and material omissions of fact, the truth of which they could not have discovered.

119. Defendant acted intentionally, knowingly, and maliciously to violate California's Unfair Competition Law, and recklessly disregarded Plaintiff's and the California Subclass Members' rights.

120. As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiff and the California Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages as described herein and as will be proved at trial.

121. Plaintiff and the California Subclass Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendant's unfair, unlawful, and fraudulent business practices; declaratory relief; injunctive relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; and other appropriate equitable relief.

**EIGTH CAUSE OF ACTION**
**Violations of Cal. Civil Code § 1770**
**(California Consumer Legal Remedies Act)**
**By Plaintiff and on Behalf of the California Subclass**

122. Plaintiff Donque restates and incorporates by reference the allegations in all Paragraphs above as though fully set forth herein.

123. From a date unknown to Plaintiffs and continuing to the present, Defendant BANA has and continues to engage in practices that violate the Consumer Legal Remedies Act, Civil Code § 1770 *et seq.*, specifically unfair, deceptive, unlawful, and unconscionable commercial practices in connection with the sale of services to consumers.

124. Plaintiffs and the members of the Class are "consumers" as defined by Civil Code § 1761(d). The financial products promoted and provided by Defendant are "services" as defined by Civil Code § 1761(b).

125. The long-term pattern of misrepresentations and omissions engaged in by BANA that underly Plaintiffs' Consumer Legal Remedies Act cause of action include:

    a. Defendant opened bank accounts without the authorization of Plaintiff and the California Subclass Members;

    b. Defendant charged Plaintiff and the California Subclass Members fees associated with the accounts that it opened without the authorization of Plaintiff and the California Subclass Members;

    c. Defendant obtained consumer reports and submitted applications for Plaintiff and the California Subclass Members without the authorization of Plaintiff and the

California Subclass Members. This conduct, with little if any utility, is unfair when weighed against the harm to Plaintiff and the California Subclass Members, including harms in the form of fees charged and impacts to their credit reports;

d.  Defendant's failure to notify Plaintiff and the California Subclass Members that it opened unauthorized accounts on their behalf but without their consent;

e.  Defendant's failure to notify Plaintiff and the California Subclass Members that it charged them fees associated with the unauthorized accounts the bank opened on their behalf but without their consent;

f.  Defendant's design and implementation of an employee evaluation and compensation program that rewarded BANA employees for the sheer number of accounts it opened on behalf of Plaintiff and the California Subclass, even if those accounts were opened without the authorization of Plaintiff and the California Subclass;

g.  Defendant's failure to correct BANA employees who opened unauthorized accounts without the authorization of Plaintiff and the California Subclass, including through the deceptive, unfair conduct described above;

h.  Defendant's failure to notify Plaintiff and the California Subclass that BANA employees had opened unauthorized accounts for Plaintiff and the California Subclass, including through the deceptive, unfair conduct described above;

i.  Defendant's failure to comply with its obligations under federal law, including with 15 U.S.C. § 1693 (Electronic Funds Transfer Act); Violations of 15 U.S.C. § 1681 (Fair Credit Reporting Act); and 15 U.S.C. § 1642; 12 C.F.R. § 1026.12(a) (Truth in Lending Act and Regulation Z);

j.  Defendant's deceptive, unfair practices also led to substantial injuries, as described above, that are not outweighed by any countervailing benefits to consumers or competition. Moreover, because Plaintiff and the California Subclass Members could not know of Defendant's deceptive scheme to open unauthorized accounts and charge customers associated fees, including by obtaining consumer reports and using such reports to submit credit applications without the authorization of Plaintiff and the California Subclass, consumers could not have reasonably avoided the harms that Defendant caused;

k.  Misrepresenting that it would comply with common law and statutory duties pertaining to the financial accounts of Plaintiff and the California Subclass, including duties imposed by 15 U.S.C. § 1693 (Electronic Funds Transfer Act); Violations of 15 U.S.C. § 1681 (Fair Credit Reporting Act); and 15 U.S.C. § 1642; 12 C.F.R. § 1026.12(a) (Truth in Lending Act and Regulation Z);

l.  Omitting, suppressing, and concealing the material fact that it opened unauthorized accounts for Plaintiff and the California Subclass;

m. Omitting, suppressing, and concealing the material fact that it charged fees associated with the unauthorized accounts it opened for Plaintiff and the California Subclass;

n. Omitting, suppressing, and concealing the material fact that it obtained consumer reports from Plaintiff and the California Subclass to apply for the unauthorized accounts it opened for Plaintiff and the California Subclass;

o. Omitting, suppressing, and concealing the material fact that it did not comply with common law and statutory duties pertaining to the financial accounts of Plaintiff and the California Subclass, including duties imposed by 15 U.S.C. § 1693 (Electronic Funds Transfer Act); Violations of 15 U.S.C. § 1681 (Fair Credit Reporting Act); and 15 U.S.C. § 1642; 12 C.F.R. § 1026.12(a) (Truth in Lending Act and Regulation Z.; and

p. Other ways to be discovered and proved at trial.

126. As a direct and proximate result of Defendant's unfair, unlawful, and fraudulent acts and practices, Plaintiff and the California Subclass Members have suffered and will continue to suffer injury, ascertainable losses of money or property, and monetary and non-monetary damages as described herein and as will be proved at trial.

127. CLRA § 1782 NOTICE. On September 1, 2023, counsel for Plaintiffs provided separate written notice of their intent to pursue claims under the CLRA and an opportunity for Defendant to cure via certified mail to Defendant at its principal places of business.

### NINTH CAUSE OF ACTION
**Violations of Cal. Civil Code § 1798.80**
**(California Customer Records Act)**
**By Plaintiff and on Behalf of the California Subclass**

128. Plaintiff Donque restates and incorporates by reference the allegations in all Paragraphs above as though fully set forth herein.

129. This Count is brought on behalf of Plaintiff and the California Subclass against Defendant.

130. "[T]o ensure that Personal Information about California residents is protected," the California legislature enacted Cal. Civ. Code §1798.81.5, which requires that any business that "owns, licenses, or maintains Personal Information about a California resident shall implement and maintain

reasonable security procedures and practices appropriate to the nature of the information, to protect the Personal Information from unauthorized access, destruction, use, modification, or disclosure."

131.     Without authorization, Defendant accessed, used, modified, and/or disclosed the Personal Identifiable Information (PII) of Plaintiff and the California Subclass in obtaining and using consumer reports to submit applications for unauthorized bank accounts without the consent of Plaintiff and the California Subclass.

132.     Defendant is a business that maintains PII about Plaintiff and California Subclass Members within the meaning of Cal. Civ. Code §1798.81.5.

133.     As a direct and proximate result of Defendant's violations of the Cal. Civ. Code §1798.81.5, Plaintiff and California Subclass members suffered damages, as described above and as will be proven at trial.

134.     Plaintiff and California Subclass members seek relief under Cal. Civ. Code §1798.84, including actual damages, civil penalties, injunctive relief, and reasonable attorneys' fees and costs.

## **REQUEST FOR RELIEF**

WHEREFORE, Plaintiffs, on behalf of themselves and the proposed Class, request that this Court:

(a)     Certify this case as a class action and appoint Plaintiffs as Class Representatives and Plaintiffs' counsel as Class Counsel;

(b)     Award Plaintiff and Class Members declaratory relief as permitted by law or equity;

(c)     Award Plaintiffs and Class Members actual, incidental, and consequential damages and available forms of recovery in an amount to be proven at trial, including any and all available compensatory damages, punitive damages, any applicable penalties and interest;

(d)     Award all reasonable costs and attorneys' fees incurred by Plaintiffs, pursuant to, common law and/or statutory law;

(e)     Set a trial by jury of all matters; and

(f)     Award such other and further relief as the Court may deem just and equitable.

Date: September 1, 2023

/s/ Hassan Zavareei

Hassan Zavareei (No. 456161)
Andrea R. Gold (No. 6282969)
**TYCKO & ZAVAREEI LLP**
2000 Pennsylvania Avenue NW,
Suite 1010
Washington, District of Columbia 20006
Telephone: (202) 919-5852
Facsimile: (202) 973-0950
*agold@tzlegal.com*
*hzavareei@tzlegal.com*

Cort Carlson (*pro hac vice*)
**TYCKO & ZAVAREEI LLP**
1970 Broadway, Suite 1070
Oakland, California 94612
Telephone: (510) 254-6808
Facsimile: (202) 973-0950
*ccarlson@tzlegal.com*

*Counsel for Plaintiffs*